## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**MELVIN L. VAZQUEZ-COLON, ET. AL.;**

Plaintiffs

     v.

**CARIBE PHYSICIANS PLAZA CORP., ET. AL.;**

Defendants

**Civil No.** 19-1153 (DRD)

## OPINION AND ORDER

On February 19, 2019, Plaintiffs Melvin Luis Vazquez Colon, Ada Iris Vazquez Colon, Marlene Lizette Vazquez Colon, Adam Alexis Vazquez Torres, and Ana Iris Colon Piña [hereinafter collectively, "Plaintiffs"] filed a *Complaint*, under federal question jurisdiction, against the following Defendants: Caribe Physicians Plaza Corp d/b/a Caribbean Medical Center [hereinafter, "CPPC" or "CMC"], Sindicato de Aseguradores para la Suscripcion Conjunta de Seguros de Responabilidad Profesional Medico-Hospitalaria ["SIMED"], Medical Protective Company [hereinafter, "MedPro"], Dr. Sanchez Lopez [hereinafter, "Dr. Sanchez"], and various other insurance companies [collectively, "Defendants"]. *See* Docket No. 1. Plaintiffs claim Defendants violated the Emergency Medical Treatment and Labor Act, 42 U.S.C. §1395dd, ["EMATALA"], as well as the state law tort statutes under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws §§ 5141-5142, by not providing adequate medical screening to Angel L. Vazquez Estrada, which they claim led to his untimely death. *See Id.*

On April 25, 2019, MedPro and CPPC filed a *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)*, claiming procedural and jurisdictional defects. *See* Docket No. 18. Defendants specifically claim that Plaintiffs have failed to state a claim under EMTALA and that

the state law tort claims are time barred. On May 2, 2019, Plaintiffs filed an *Opposition to Motion to Dismiss*, claiming that their state law tort claims are not time barred because they were tolled extrajudicially and said written letters a claim for relief under EMTALA. *See* Docket No. 27. For the reasons set forth below, the Court hereby **DENIES** Defendants MedPro and CPPC's *Motion to Dismiss* at Docket No. 18.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Taking the allegations set forth in the *Complaint* as true, the facts are as follows:

Angel L. Vazquez Estrada [hereinafter, "the decedent" or "Mr. Vazquez"] was a "79-year-old male with [a] history of Hyperlipidemia, Peripheral Vascular Disease, Gastritis, and Diabetes Mellitus without any allergies" and who also had "a history of chronic cigarette and alcohol use." *See* Docket 1 at ¶ 3.1. On March 21, 2017, due to the intensity of the abdominal and chest pain that the decedent complained thereto, his wife Plaintiff Ana Iris Colon Piña called 911 for assistance at approximately 6:30pm. *Id*. at 3.2. Upon arrival, the paramedics evaluated the decedent and determined that he had "abdominal pain and irregular heart rate" which they noted in a chart that was later provided to CMC personnel at the hospital. *Id*. at ¶ 3.3. After decedent was evaluated for a second time, "he was transported by ambulance to the CMC's Emergency Room." *Id*. at ¶ 3.4 "The decedent was triaged [by a nurse] at approximately 7:40p.m.", who recorded his chief complaint as acute abdominal pain and pain in the thorax with severe intensity, and that the areas involved were "the right and left chest and the upper and lower abdomen." *Id*. at ¶¶ 3.5-3.6.

The decedent's condition was classified as an emergency and he was later evaluated by Dr. Sanchez approximately nine minutes later, at 7:49 pm, who "established a past medical history of abdominal pain, cigarette smoking, and daily alcohol consumption, and recorded [a] stomach ache" as the decedent's chief complaint. *Id*. at ¶¶ 3.6-3.7 As result, Dr. Sanchez diagnosed the

decedent with "epigastric tenderness", ordered an array of laboratory tests, and prescribed various medications to be administered to the decedent. *Id*. at ¶ 3.7. "At around 8:50p.m., the decedent was found unresponsive" and without a pulse. *Id*. at ¶ 3.8. Despite attempts to revive him, "Mr. Vazquez was declared dead at 9:35p.m. with a final diagnosis of acute cardiac arrest." *Id*. Plaintiffs state that upon the decedent's arrival at the CMC's Emergency Room, the hospital or Dr. Sanchez "did not activate nor follow the CMC and/or the [Emergency Room]'s diagnosis and treatment protocols for chest pain and/or acute coronary syndrome." *Id*. Despite being "mandated by the CMC's or the [Emergency Room's] diagnosis and treatment protocols for chest pain and/or acute coronary syndrome",[1] an EKG [electrocardiogram] was not ordered for the decedent within 10 minutes of his arrival; nor was he provided any type of "antianginal, antiplatelet, or anticoagulant therapy." Docket No. 1 at ¶ 3.9. These protocols where allegedly part of the procedures required in the emergency room of the hospital.

In their *Motion to Dismiss*, MedPro and CPPC contend the validity of Plaintiffs' claims by stating that they fail to state a valid claim under EMTALA because the decedent was not "'dumped' onto [an]other hospital, and/or dumped and/or discharged by the hospital who do not want to treat him" and because Plaintiffs did not prove that he "was an uninsured, underinsured, and/or and indigent patient." *See* Docket No. 18 at 8. MedPro and CPPC also argue that the *Complaint* is time barred as to the state law tort claims because they never received the letters allegedly sent on or about February 23, 2018, and March 5, 2018, that Plaintiffs claim extrajudicially that the letter tolled the 1-year statute of limitations. *Id*. at 10-11. However, Defendants' averred that said documents did not comply with the necessary requirements to toll the statue.

---

[1] *See* Docket No. 27 at 7.

Hence, on May 5, 2019, Plaintiffs filed an *Opposition to Motion to Dismiss*, in which they construe that they have properly stated a claim entitled to relief under EMTALA because the decedent was not provided proper and/or timely medical screening and restating that the state law tort claims were timely tolled. *See* Docket No. 27.

## II.     STANDARD OF REVIEW

### A.  <u>Motions under Rule 12 (b) (6)</u>

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement of relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).') (quoting *Twombly*, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570; *see e.g. Ashcroft v. Iqbal*, 556 U.S. at 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. at 544, and *Iqbal*, 556 U.S. at 662. "Context based" means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. See *Iqbal*, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions,

4

conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (quoting *Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but has not 'show[n]' 'that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (citing *Twombly* 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio-Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 556 U.S. at 679); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 45 (1st Cir. 2009).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" even if seemingly incredible. *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556); *Ocasio-Hernandez*, 640

F.3d at 12 (citing *Twombly*, 550 U.S. at 556) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"); *see, also, Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 39 n. 6 (1st Cir. 2012) (emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *See Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id*. at 596; *see Iqbal*, 556 U.S. at 681 ("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . .. it is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *See Mendez Internet Mgmt. Servs. V. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[] out rhetoric masquerading as litigation.").

The First Circuit outlined two considerations for district courts to note when analyzing a motion to dismiss. *See García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First,

a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*. *Id*. at 104. Second, district courts should accord "some latitude in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id*. (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.) (Internal citations and quotations omitted).

### III.   ANALYSIS

#### A.  Plaintiffs' EMTALA Claim

As previously stated, Defendants MedPro and CPPC argue that dismissal is appropriate because Plaintiffs fail to prove that the decedent, Angel L. Vazquez Estrada, was an "uninsured, underinsured, and/or indigent patient" and that he was not "'dumped' onto [an]other hospital, and/or dumped and/or discharged by the hospital who did not was to treat him." *See* Docket No. 18 at 8. However, there are other EMTALA mandates that must be strictly followed. To that end, Plaintiffs reiterate that they have properly stated a claim for relief under EMTALA's "appropriate medical screening prong." *See* Docket No. 27 at ¶ 2.5. The Court agrees with Plaintiffs.

Congress created EMTALA "in response to 'the increasing number of reports that hospital emergency rooms are refusing to accept or treat patients with emergency conditions if the patient does not have medical insurance.'" *Cruz-Queipo v. Hospital Español Auxilio Mutuo de Puerto Rico*, 417 F.3d 67, 69 (1st Cir. 2005) (citing *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1189 (1st Cir. 1995)). EMTALA essentially "'creates private rights of action where hospitals violate [its] mandates.'" *Morales-Ramos v. Hospital Episcopal San Lucas Guayama, Inc.*, 261 F.Supp.3d 122, 130 (D.P.R. 2016) (citing *Ramos-Cruz v. Centro Medico del Turabo*, 642 F.3d 17, 18 (1st

Cir. 2011)). This statute clearly establishes "two linchpin provisions." *Correa*, 69 F.3d at 1190. The first provision "requires that a participating hospital afford an appropriate medical screening to all persons who come to its emergency room seeking medical assistance." *Id*. (citing 42 U.S.C. § 1395dd(a)); *see*, *also*, *Cruz-Quiepo*, *supra*, at 70. The second provision "require that, if an emergency medical condition exists, the participating hospital must render the services that are necessary to stabilize the patient's condition, unless transferring the patient to another facility is medically indicated and can be accomplished with relative safety." *Id*. (citing 42 U.S.C. § 1395dd(b)(1)(A) & (B), (c)(1)).[2] Subsections (a) and (b) must "be read disjunctively, not conjunctively." *Lopez-Soto v. Hawayek*, 175 F.3d 170, 171 (1st Cir. 1999).

On the other hand, there is ample jurisprudence by the First Circuit and the District Court of Puerto Rico as to the standard of pleading in order to properly establish a violation under EMTALA. To wit, to satisfy this standard:

> a plaintiff must show (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department; (2) the plaintiff arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) released the patient without first stabilizing the emergency medical condition.

*Cruz-Vazquez v. Mennonite General Hosp., Inc*, 717 F.3d 63, 68 (1st Cir. 2013)) (citing *Correa*, 69 F.3d at 1190); see, also, *Malave Sastre v. Hosp. Doctor's Ctr., Inc.*, 93 F. Supp. 2d 105, 109 (D.P.R. 2000). Therefore, a plaintiff claiming an EMTALA screening violation "'need not prove

---

[2] For purposes of this case, the relevant part of EMTALA is subsection (a), which states:

    (a)  Medical screening requirement

    In the case of a hospital emergency department, if any individual (whether or not eligible under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section exists.

42 U.S.C. § 1395dd(a).

that she [or he] actually suffered from an emergency medical condition when she [or he] first came through the portals of the defendant's facility; the failure appropriately to screen, by itself, is sufficient to ground liability as long as the other elements of the cause of action are met." *Id.* at 69. Therefore, "'[a] [participating] hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints." *Del Carmen Guadalupe v. Negron Agosto*, 299 F.3d 15, 20 (1st Cir. 2002) (citing *Correa*, 69 F.3d at 1192).

Moreover, "[w]hen a hospital prescribes internal procedures for a screening examination, those internal procedures "'set the parameters for an appropriate screening.'" *Cruz-Queipo*, 417 F.3d at 70 (citing *Correa*, 69 F.3d at 1192). "A hospital thus must adhere to its own procedures in administering the screening examination." *Id*. The First Circuit has provided three (3) instances where, "for purposes of EMTALA coverage", "a screening protocol was not followed when triggering symptoms were identified", to wit: "(1) [when] no screening protocol existed[;] (2) [when] standard screening procedures existed but were not followed because no identifiable triggering symptoms were presented[;] and (3) [when] standard screening procedures were in fact followed when identifiable triggering symptoms were presented but an improper diagnosis resulted." *Cruz-Vazquez*, 717 F.3d at 69. (citations omitted).

Hence, "a refusal to follow regular screening procedures [on an emergency room] in a particular instance contravenes the [EMTALA] statute[;] but faulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute." *Correa*, 69 F.3d at 1192-93. (citations omitted). The Court must also note that "EMTALA does not create a cause of action for medical malpractice." *Id*. at 1192 (citing *Gatewood v. Washington*

*Healthcare Corp.*, 933 F.2d 1037, 1041 (D.C. Cir. 1991)). This is why an "'appropriate screening is properly determined not by reference to particular outcomes, but instead by reference to a hospital's standard screening procedures.'" *Malave Sastre v. Hospital Doctor's Center, Inc.*, 93 F.Supp.2d 105, 109 (D.P.R. 2000)) (internal quotations omitted) (citing *Gatewood*, 933 F.2d at 1039).

In the present case, the grounds under which Defendants MedPro and CPPC argue that Plaintiffs fails to state a valid claim under EMTALA are misplaced. The First Circuit has previously held that "EMTALA, by its terms, covers all patients who come to a hospital's emergency department, and requires that they be appropriately screened, regardless of insurance status or ability to pay." *Correa*, 69 F.3d at 1194. Therefore, "a desire to shirk the burden of uncompensated care is not a necessary element of a cause of action under EMTALA." *Id*. at 1193-94. Furthermore, Defendants MedPro and CPPC do not contest Plaintiffs' allegation concerning the classification of Mr. Vazquez condition as an emergency. Nor do they contest Plaintiffs' contention that Defendants did not perform an EKG on Mr. Vazquez in the first 10 minutes that he arrived at the CMC's Emergency Room "as mandated by the CMC's or the [Emergency Room's] diagnosis and treatment protocols for chest pain and/or acute coronary syndrome",[3] even though both the paramedics and the triage nurse made note in their charts that Mr. Vazquez was suffering from intense chest pains.[4] The fact of the matter is that CPPC is a hospital covered by EMTALA that operates an emergency room,[5] to which Mr. Vazquez arrived via ambulance, seeking treatment for acute chest pains.[6] Despite the fact that CMC Emergency Room guidelines require an EKG test to be done to people experiencing similar symptoms, no EKG was done as

---

[3] *See* Docket No. 27 at 7.
[4] *See* Docket No. 1 at ¶¶ 3.3-3.6.
[5] *See Cruz-Vazquez*, 717 F.3d at 68.
[6] *See* Docket No. 1 at ¶¶ 3.5-3.6.

alleged by Plaintiffs in this case. Because the alleged improper medical screening procedure on the part of the CPPC, Mr. Vazquez ultimately passed away from a cardiac arrest as alleged at Docket No. 1. Since the Court must take the facts stated in Plaintiffs *Complaint* as true,[7] and seeing as Defendants MedPro and CPPC have not contested any of the material facts with regards to the EMTALA claim, the Court believes that "Plaintiffs' allegations that the hospital failed to provide [the decedent] with a screening . . . comparable to that given to other patients sufficiently present a cause of action under EMTALA"; hence, the Court **DENIES** Defendants MedPro and CPPC's *Motion to Dismiss*, as it related to the EMTALA claim.[8]

### B.  Tolling of the State Law Tort Claim

"Article 1869 of the Puerto Rico Civil Code provides a one-year statute of limitation for tort claims arising under Article 1802 [and 1803]." *Vazquez Vazquez v. Checkpoint Systems of Puerto Rico, Inc.*, 609 F.Supp.2d 217, 222 (D.P.R. 2009) (citing 31 P.R. Laws § 5298). "'That period ordinarily begins to run at the time that the aggrieved party knows (or should have known) of both his injury and the identity of the party who caused it.'" *Rivera v. LifeLink Foundation, Inc.*, 208 F.Supp.3d 425, 429 (D.P.R. 2016) (citing *Gonzalez Figueroa v. J.C. Penny P.R., Inc.*, 586 F.3d 313, 318 (1st Cir. 2009)); *See also Vazquez Vazquez,* 609 F.Supp.2d at 222 ("Said period begins when the aggrieved party has knowledge of the injury."). However, this prescription period can be tolled by "filing a suit in court, *by the creditor's extrajudicial claim* or by any act in which the debtor acknowledges the existing debt." *Vazquez Vazquez,* 609 F.Supp.2d at 222 (emphasis added) (citing 31 P.R. Laws § 5303). All of the methods stated herein to toll the statute of limitations "must be interpreted restrictively against the person invoking their protection." *LifeLink*

---

[7] *See*, *for example*, *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012).
[8] The Court is concluding that a dismissal is unwarranted, pursuant to the allegations. Moreover, the Court clarifies that it has not performed no determinations, at this stage, as to the merits of either parties' allegations.

*Foundation, Inc.*, 208 F.Supp.3d at 429. When attempting to toll the statute of limitations extrajudicially, "[t]he only limitations are that the claim must be made by the holder of the substantive right (or his legal representative), it must be addressed to the debtor or passive subject of the right, not to a third party, and it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit." *Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 44 (1st Cir. 1990) (citations omitted).

In the instant case, MedPro and CPPC also argue that Plaintiff's tort claims under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws §§ 5141-5142, are time barred because Plaintiffs filed their *Complaint* after the one (1) year statute of limitation. *See* Docket No. 18 at 9-11. However, Plaintiffs contend that the statute of limitations was extrajudicially tolled by two letters "sent to, and received by, Defendants" on or around February 23, 2018 and March 5, 2018, respectively. *See* Docket No. 1 at ¶ 5.11. Hence, this matter calls for a credibility mater which the Court cannot determine via a motion to dismiss. *See*, *for example*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Seeing as the Court is obliged to take the Plaintiffs' good faith allegations as true, *Sepúlveda-Villarini* 628 F.3d at 30, for purposes of disposing of MedPro and CPPC's *Motion to Dismiss*, the Court concludes that the state law tort claims' one (1) year statute of limitations has been tolled. Therefore, the Court hereby **DENIES** Defendants MedPro and CPPC's *Motion to Dismiss*, as it relates to the state law tort claims.

## IV.   CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Defendants Medical Protective Company and Caribe Physicians Plaza Corp.'s *Motion to Dismiss Pursuant to Federal Rule of*

*Civil Procedure 12(b)(6)*, at Docket No. 18. Once discovery has concluded, Defendants may renew their argument regarding the state law tort claims, at their discretion, via a motion for summary judgment.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, April 21, 2020.

*S/ Daniel R. Domínguez*
DANIEL R. DOMÍNGUEZ
United States District Judge